May I reserve one minute for rebuttal? Yes, you may. Thank you. May it please the Court, my name is Tom Towsley, I am counsel for the petitioner Mike Becker. First, I want to thank the Court for giving me the opportunity to argue on Mr. Becker's  case. I'd also like to compliment Julie Ronkin, the proponent coordinator, and Joanne Coxey, the case coordinator here in San Francisco for their very professional and courteous support. They are a delight to talk to. Your Honor, this case involves Mike Becker. He was admitted to the United States in 1961 at the age of six years old. He has two adult children, a common-law wife of over 30 years. He furthermore has three United States citizens siblings, a lawful permanent resident mother, no known family in Germany, and as the immigration judge pointed out, who wanted to grant Mike lawful permanent resident, he had family members, employers, and friends that wrote letters attesting to Mr. Becker's work ethic, his efforts toward rehabilitation, and his positive influence in his children's life. The immigration judge also noted that he had completed various substance abuse and community service programs. You know, I think we appreciate the fact that he would really otherwise qualify for this kind of relief, but the problem is, is the convictions. Yes, Your Honor, and I will get right to that post-haste. Your first addressing the question of whether the immigration judge properly pre-termitted Mr. Becker's cancellation application under HCFR 1240.8D based on a rap sheet showing a 1978 conviction in Maricopa County, Arizona, for possession of marijuana for sale, which resulted in a sentence of six months incarceration and probation, to which Mr. Becker admitted to during proceedings, and which he also affirmatively put down on the cancellation application. The regulation in question, which was promulgated first in 1997, by the way, states that if the evidence indicates, and that's a key term in this case, indicates that a mandatory ground of denial, which in this case means you've been convicted of an aggravated felony, therefore you can't get cancellation removal, may apply in the case, then the burden shifts to the alien to prove by preponderance of the evidence that the mandatory ground of denial applies. That's in contrast to removability, which obviously is the government's burden of proof. In this situation, the Petitioner submits that the rap sheet, his admission that he sold a joint to a friend, was not sufficient evidence to shift the burden of proof, because there wasn't the immigration judge didn't even have elements of the statute from 1978. And as you probably well know, the drug-related aggravated felony under 101A43B of the INA is a very complicated definition involving illicit trafficking, which is, as the Board said in Matter of Davis, involves merchant or trading nature and involves the sale. In addition to that, the Supreme Court of Arizona had ruled in 1973 under the old drug laws, which the immigration judge noted were repealed, that bartering, exchanging and transferring a drug was sufficient to make someone guilty of the crime of possession of marijuana for sale. So as was noted in the brief, the Ninth Circuit has addressed this language in the analogous regulation for asylum. In that case, there was evidence that the person was a persecutor, therefore ineligible to receive asylum withholding. And the Ninth Circuit held that there must be an inference, the evidence must raise an inference. In this situation, I submit that the inference has not been raised. As I quoted in the brief, Black's law definition, it says that it must be based on facts that the logical conclusion is drawn from. And in this situation, based on the fact that he could have been convicted of the crime, possession of sale, for merely giving a joint to a friend, that the evidence did not raise sufficient inference for him to shift the burden of proof. If I may shift into the second issue on due process, this is, I think, the immigration judge Ladslow was very well-meaning and very well-intentioned, but I think in accordance with Ninth Circuit law, he violated Mr. Becker's rights to due process and violated the statutory right to present evidence, to present his case. In this situation, as you are aware from the briefs, the government had indicated early on in a master calendar hearing the existence of the rap sheet. Mr. Becker, struggling with this situation, was trying to understand, he's prosaic and he's detained, what the government was trying to say. And so he asked, well, how can I find out about aggravated felony? The judge said consult a lawyer. He said, can I get a copy of the criminal records? Well, you will. Well, that didn't happen until about eight days before the individual hearing. The judge says in a master calendar hearing, all right, government, you submit the motion to pre-termit, next calendar hearing, master calendar hearing. Becker, you submit the cancellation application. Becker does that. The government submits no motion to pre-termit. Then they go to the individual hearing. Mr. Becker is extensively examined and cross-examined by the government, by the immigration judge. The immigration judge once again indicates that he wants to grant relief to Mr. Becker. At that point, the government removes orally at the end of proceedings for a motion to pre-termit. The immigration judge says untimely. He denies it. In his decision, he denotes it's denied as untimely. In a cryptic remark, he said, well, of course, I have to determine whether he's eligible. Now, here's Mr. Becker, a pro se detained alien. Ninth Circuit has said, a pro se detained alien, the judges must scrupulously and consciously, conscientiously explore the facts. They must be aware of the circumstances of when a person in that kind of situation is going to have access to the type of evidence and to the knowledge that can be to present their case. The board and the government seem to have decided this case in a vacuum. They don't understand the situation of a Mr. Becker who's being kept in a cell, in a prison, for two years. And the fact that over half, by the EOR's own statistics, over half of the pro se detained aliens are, I mean, detained aliens are unrepresented. It's not realistic for the government to expect that Mr. Becker would act like an attorney. And it did not cross the line into advocacy for the immigration judge to say, look, Mr. Becker, here's the regulation. Here's a copy of the regulation. Look, Mr. Becker, this is what the government is arguing. Look, Mr. Becker, here's a matter of Davis. This is what a matter of Davis says about illicit trafficking, about drug trafficking. Immigration judges do that all the time. And as the counsel mentioned in the brief, the attorney general, who is the boss of the agency, admonished an immigration judge in matter of JFF for crossing the line and becoming an advocate for an alien who had pried for withholding or, excuse me, a convention against torture relief. Now, as we know, if you've had any military experience, orders coming down from the general can be interpreted in various ways by the time they reach the ranks. And it's true in this situation, I think it's important that the attorney general, no question, has the job and responsibility of how his IJs should work. However, this Court has the responsibility of ensuring that due process is complied with in how they conduct their business. In this situation, immigration judges, and there are a lot of them in the Ninth Circuit, are going to listen very carefully to the attorney general's remark in WFF. So I think I would urge the Court to look at this very carefully, the due process. On the third issue regarding the retroactivity. Gate of Border Reserve, a minute. Oh, yes. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I'm Anthony McCastor, I represent the Attorney General of the United States in this case. Because the petition is removable by reason of having committed a controlled substance offense, this Court's jurisdiction is limited to simply constitutional claims and questions of law. Of course, that standard of view is de novo for this Court. And within that context of the jurisdiction, the petition has raised three issues. First, the improper shifting of the burden, which is a legal question. The due process claim, which is obviously the constitutional question. And the retroactivity claim. All are without merit. I'll address each one in order. First, and the very narrow legal question as presented before this Court, is whether the immigration judge properly shifted the burden to petitioner to determine his eligibility for relief. And in that case, the immigration judge followed the particular regulation which is appropriate in this particular case. He found first that the evidence that was presented, and there was three forms of evidence, which my brethren alluded to. First, the FBI rap sheet. And second, the petitioner's testimony. And let me clear up one thing. It was not one joint. It was one ounce of marijuana. And then the petitioner's admission on his application for relief, the cancellation. So all three pieces of evidence, okay, testimony, the rap sheet, and the application, all indicated that he was convicted of an aggravated felony. That is, possession for sale of marijuana. Which would make him. Let me mention the thing that has me bothered. If there had been no admission, would you have been able to prove from that Arizona statute and the conviction under that statute that it was, that he was convicted of an aggravated felony? Well, we would just have to have the evidence to indicate it. Because he was not charged with removability under this charge, this 978. We just have to show that the evidence would indicate. So if you take out the two other pieces of evidence, the admission, which the immigration judge commended the petitioner for being forthright and honest and outlying everything that was involved in his life. Without that and without the application, another critical piece of evidence, it may or may not have been enough to indicate. There probably would have been more searching by the immigration judge concerning what, in fact, the conviction was. Posting counsel mentions that it could be convicted under that statute in something that wouldn't qualify as an aggravated felony. Right. But that would have been the burden of the Respondent. That's really the only legal question before the court. If he was charged with removability of this crime, then clearly, as the judge pointed out in his decision, we would have had to prove by clear and convincing evidence that he was, in fact, removable. In this particular case, it goes to the relief. And as this court said in Salviano-Fernandez, when it looked at this particular regulation recently this year, it said the burden is on the petitioner. He must show his, if the evidence indicates, and that's pretty much a low threshold. And in this case, you have three pretty. You know what bothers me, though? He was proceeding pro-serve, pro-per. And it's pretty refined to be able to look at the statute and decide that really he could have been convicted under that statute under something that would not have been an aggravated felony. It's pretty hard for us as attorneys and judges to understand all that. I don't think he would have. And so he was kind of encouraged to be forthright and all that sort of thing. But had he had an attorney, I doubt that there would have been the admission. I doubt that there would have been found that that Arizona statute was enough for an aggravated felony. Well, that's interesting, Your Honor. In other words, if the petitioner didn't say anything and sort of, using the slang, lawyered up, then he would have a better case. But in this particular case, he did. He has a long history, and he wasn't hiding it. And I think that's why the judge said in his alternative ruling, had you been eligible, I would have granted it because of everything that you've told me, because of your long history, because of everything. And I think he held that in the petitioner's favor when he looked at the discretionary aspect, had he been able to get there. Yeah, but he couldn't get there. I think all of the things that discretionary matters, it was pretty clear he'd be eligible for that, except for this one conviction in 1978. Right. But, Your Honor, if you flip that around, if he didn't admit it and he didn't put it on his application and the immigration judge found out about it, it's questionable whether or not he would have gone to that secondary ruling that, in my discretion, I would have given it to you, because he may have decided you're trying to hide something here. I mean, here, clearly, it says it, and now you're telling me you're not admitting it or anything? I think in here, and I think that's why he didn't admit it. Yes, I was convicted under that statute. And he told about the offenses. I mean, he said what had happened. But if he had an attorney, I don't think he would have told about that. I don't think that's really – you might be right, Your Honor, but that really isn't the issue. Here, the evidence – and all the immigration judge, the legal error that has been raised is the improper shifting of the burden, and because that's really the only thing this Court can reach is the legal errors. Here, the immigration judge followed exactly what the regulation has said and exactly what this Court has said, and that that burden does shift. And here, the evidence, the three pieces of evidence that we have clearly shifted that burden. Well, I think the burden shifted. No doubt that the burden is on the alien in seeking to have this relief. And that's – What just bothers me is, was he in prison for two years? I don't know if it was two years, but he was in prison at the time of the hearing. Yes, Your Honor. Yeah. And so, you know, did he really have a good chance to get an attorney? Well, Your Honor, it's interesting you should ask. He asked for time, and the immigration judge gave him three continuances and told him, look, here's the issue, because he asked whether this crime is an aggravated – I have to show that it's not an aggravated felony by a preponderance of the evidence. And the immigration judge, look, I can't give you advice on whether it is. But go – here, go seek a lawyer. He's given him time to go get a lawyer, which many – That's true. Yes, which many incarcerated aliens do get attorneys. I mean, there's a network for that, and they find the attorneys, or they get free legal services, which is available also to get this. And he gave him that chance, and he gave him another chance, and he gave him another chance. He didn't rush him to the thing. He said, look, I mean, I think the immigration judge, which goes a little bit to the due process concerns, gave this alien the right to be heard, the fair hearing, tell them what the issue is. He even denied the motion to pre-admit the application, because it was untimely and felt it was unfair. And that's why he heard all the discretionary evidence, because if he found he was ineligible right off the bat, he didn't really have to get to the discretionary issue. He didn't have to hear all the evidence, but he did. And to the immigration judge's credit, he really let the petitioner go on for pages and pages of what is the narrative, basically, of his life. And the immigration judge never stopped him, never said that's too far, I don't want to hear about it, that's irrelevant, I found you ineligible. He let him go on. And even after the testimony was over, the petitioner submitted a letter, which is also included in, to try and explain some of the things about his discretionary factors. But on the legal issue, there's no question, I mean, what evidence could he have presented? He said, I did, I sold marijuana, and he admitted quite frankly, it probably wasn't the first time I sold it, probably wasn't the last time I sold it, I did sell an ounce to my friend who happened to be an informant for the local law enforcement. I mean, he didn't. So all the rest of the testimony was really, didn't amount to anything. Well, I think the fact that he let him go on didn't help him a bit. Well, unless there was some evidence in that testimony that raised by a preponderance of the evidence, which is the standard in the regulation, that he was in fact not convicted of an aggravated felony. And I think that is all part and parcel. The immigration judge didn't want to cut him off. He just let him testify. And if he had said something that raised, as my brother said in his brief, that it was a gift, that I gave him as a gift, or, you know, it wasn't, then maybe that would have been a preponderance of the evidence, that it was not an aggravated felony. But he never said any of that. I mean, it's all hypothetical and speculation. I mean, he was given clear reign to say whatever he wanted to say, either to carry his burden, to show it was not by a preponderance of the evidence an aggravated felony, or to meet his discretionary burden, to say, look, I'm worthy of some discretionary relief. And that really goes to the due process issue. And I see my time's up. I really don't have time to address the retroactivity claim, but I'll just rely on the brief on that part. I think. Thank you very much, Your Honors. Just real quickly, Your Honors. First, I want to thank Mr. Nick Castro for pointing out that I was wrong on the factual thing. It wasn't a joint. It was announced. Just real quick, remember, 240AA3 only bars cancellation removal if you've been convicted of an aggravated felony. In other cases that have dealt with this regulation, I mean, there's no doubt it's a controlled substance violation. Two, the board has not defined any of the terms in this regulation, and I think it would be helpful. And I don't think it should be that any evidence shifts the burden. This is very important, because the service, what the immigration service does is they don't charge the AGFL, but they know that ultimately it's going to deprive the person of relief removal. It's not realistic, third point, not realistic for these people to be represented. Eloy is in the middle of nowhere. I've been down there miles away from Phoenix. The Phoenix bar doesn't frequent there, and a lot of these guys don't have a whole lot of money. And free legal services, the Florence Project advises over 1,000 inmates. It's amazing work, what they do. They're fantastic. But they represent maybe one person a month in court. And the last thing you have kids and a wife and so forth and other family members there, he had a better chance of getting an attorney representing him. It was peculiar to me that he did not. That's why he's in this situation. He needs you. Yes, it is true, Your Honor. He does have family, and they could have retained counsel. But many aliens are in that situation, and quite frankly, they don't get in the situation if they had an attorney in the first place, oftentimes. But not even getting into removal proceedings, because you can sometimes jawbone the service not to exercise prosecutorial discretion. Last thing is, the immigration judge was very well-meaning, but he misled Mr. Becker. He denied the motion for the service to pre-terminate not once, but twice. He allowed him to testify fully, and then said, okay, I'm closing the record. I'm adjourning the hearing, and I'm going to issue a decision. And then he denies it on the very basis that the government moved for. So how could Mr. Becker expect to rebut this evidence when he thinks it's not even an issue?  All right. Thank you, Counsel. The case result will be submitted, and we will be in recess for about 10 minutes.
judges: Hug, Tashima, Gould